UNITED STATES of America,
Plaintiff–Appellee,

v.

Shawn D. LAWRENCE, Defendant–
Appellant.

No. 90–1781.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1991.

Decided Dec. 19, 1991.

Rodney Cubbie, Office of U.S. Atty., Milwaukee, Wis. (argued), for plaintiff-appellee.

Thomas A. Gibbons, Ari M. Trubitt (argued), Kreiter & Associates, Chicago, Ill., for defendant-appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Defendant-appellant Shawn Lawrence was convicted on two counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and was sentenced under the Sentencing Guidelines to 108 months imprisonment and an additional four years of supervised release. He appeals his conviction arguing that (1) that the "100 to 1 ratio" of cocaine to cocaine base, for purposes of determining sentencing levels under the Guidelines, has no rational basis and thus violates the Due Process and Equal Protection Clauses, and (2) the district court's assessment of a two-level offense level increase for obstruction of justice was clearly erroneous. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

On October 24, 1989, a federal grand jury returned an indictment against the defendant, Shawn Lawrence, charging him with two counts of possession of cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Each count related to a separate incident in which the defendant was arrested for possession of cocaine base with intent to distribute. On appeal, the defendant does not contest the validity of his arrests nor the seizures of the drugs.

The defendant proceeded to trial on January 16, 1990. At trial, Officer Ferguson of the Glendale, Wisconsin Police Department, testified that he apprehended Lawrence on December 11, 1988 for possession of an alcoholic beverage by a minor (Lawrence was 19 at the time).[1] During a pat down search, the officer discovered a clear plastic bag containing thirteen small packets (amounting to 6.42 grams) of cocaine and four larger resealable clear plastic bags containing crack (amounting to 2.327 grams) in Lawrence's right front pants pocket. Thereafter, some six months later on May 19, 1989, the defendant was arrested for possession of crack cocaine by Officer Riojas of the Milwaukee Police Department while responding to a domestic violence complaint in Lawrence's apartment at 2440A North 16th Street, Milwaukee, Wisconsin. Officer Riojas testified at trial that he met with a Miss LaDawana Norris outside this address. Miss Norris was limping and told Officer Riojas that her boyfriend, Shawn Lawrence, the defendant, had choked her and struck her with a hammer. Officer Riojas testified at trial that Miss Norris also told him during his investigation of the assault that Lawrence was selling crack and cocaine out of the 2440A North 16th Street address and that if Lawrence knew she was accompanied by a police officer he would not open the door and might attempt to flee by jumping off the balcony. Officer Riojas and Norris went to the apartment, Norris knocked on the door and proceeded to engage Lawrence in conversation. After several minutes, Lawrence opened the door and Officer Riojas advised Lawrence that Norris stated that he had been choking her and hitting her with a hammer. Lawrence denied abusing or attacking Norris and stated that there was no hammer or any type of weapon in his apartment. At this time Officer Riojas asked Lawrence if he could search his apartment for the hammer and Lawrence consented. While searching in the apartment for the hammer, Riojas discovered an opened brown paper bag behind a couch containing thirty small plastic packets of cocaine base (amounting to 7.049 grams), ninety-five similar plastic packets that were empty, and another plastic bag containing a one and one-half inch nugget of cocaine base (amounting to 14.236 grams).[2]

Detective Steven Spingola of the Milwaukee Police Department testified that following the May 19, 1989 arrest for crack cocaine possession, he interrogated the defendant on two separate occasions with the first interview taking place shortly after midnight on May 20, 1989. At this time the defendant-appellant, Lawrence, told Spingola that he lived alone at the 2440A North 16th Street address and that no one else had access to the premises as he was the only one who had keys for the apartment. The defendant further stated that he smoked powdered crack, and that the most he had ever purchased at one time was seven bags of crack, and that the large number of empty baggies found in the apartment were residual baggies accumulated from previous personal usage of crack. Lawrence related that he placed the paper bag behind the couch (the bag that Riojas discovered), and denied knowledge that the bag contained crack. Approximately nine hours later, Detective Spingola again questioned Lawrence, who changed his story again and stated that he had

---

1. In Wisconsin, it is illegal for an individual under the age of 21 to consume or be in possession of alcoholic beverages.

2. After discovering the crack cocaine, the officer subsequently found a hammer in Lawrence's bedroom in a space between the mattress on the floor and the bedroom wall.

purchased one-half ounce of crack from a street dealer named "Solo" for $500.00 and still owed him $300.00 of the purchase price. The defendant further informed the officer that he prepared the cocaine base from the cocaine he purchased from Solo and that he planned to share the crack with several friends.

In contradiction of the statement he gave to the officers at the time of his arrest, at trial, Lawrence gave a third different story when he denied knowing anything about the drugs found in his apartment on May 19, 1989: He denied getting cocaine from Solo, and instead, Lawrence testified that when he arrived at home he found Norris in the apartment with Solo and that he picked up the paper bag that contained the crack and threw it behind the couch not knowing that there were drugs in the bag. The defendant called LaDawana Norris to testify on his behalf, who provided a fourth explanation for the crack found behind the couch and further denied telling Officer Riojas about the defendant selling crack from the 2440A North 16th Street address. She also stated that she was smoking crack with Solo at that residence on May 19, 1989 and that when Lawrence came home, Solo put his "stuff" behind the couch. The jury chose not to believe the testimony of the defendant and Norris and found the defendant guilty on both counts of possession of a controlled substance with intent to distribute. The district court sentenced the defendant to 108 months imprisonment on each count to run concurrently with each other followed by four years of supervised release.

## II. ISSUES FOR REVIEW

The defendant argues on appeal that (1) the sections of the Drug Quantity Tables treating one gram of cocaine base the same as 100 grams of cocaine for purposes of determining sentencing levels under the Guidelines has no rational basis and thus violates the defendant's constitutional rights to Due Process and Equal Protection; and (2) the district court's two-level upward adjustment of his base offense lev-el for obstruction of justice was clearly erroneous.

## III. DISCUSSION

### A.

The defendant argues that the Drug Quantity and Drug Equivalency Tables incorporated into the Sentencing Guidelines Section 2D1.1(a)(3) that treats one gram of cocaine base the same as 100 grams of cocaine for purposes of determining sentencing levels violates his rights to Due Process and Equal Protection. The defendant states in his brief that "[t]he whole thrust of due process and equal protection is that persons similarly situated will be treated similarly [and] ... the current '100 to 1 Ratio' is so far from the mark that it amounts to overkill of cocaine base offenders as compared to cocaine offenders."

The defendant contends that if there were no statutory or Guidelines distinction between cocaine and cocaine base offenses, and the penalties for the quantity of a drug were the same, then pursuant to Guidelines Section 2D1.1(c)(15), the defendant would have a base offense level of 14 (25 to 50 grams of cocaine). With the two-level increase for obstruction of justice, and a Criminal History Category of II, the sentencing range for the defendant would have been 24 to 30 months, rather than the 108 month sentence he received, and thus, the defendant contends that he has been punished 4.5 times more severely for possessing cocaine base than if he possessed cocaine. Moreover, the defendant alleges that since cocaine and cocaine base are chemically the same drug, have the same pharmacological effects on the user, and present largely the same problems to law enforcement officials, the statutory and Guidelines scheme "has no rational basis and is in fact arbitrary in its inception, and violates due process...."

The defendant was sentenced under 21 U.S.C. § 841(b)(1)(A)(iii), which provides that anyone convicted of possession with intent to distribute "*50 grams or more* of a mixture or substance ... which contains cocaine base [crack]" shall be sentenced to

no less than ten years in prison, and the same penalty is imposed on a defendant who possesses with intent to distribute *five kilograms* of cocaine. (Emphasis added). The Guidelines have adopted the same sentencing scheme, treating one gram of cocaine base the same as one hundred grams of cocaine ("100 to 1 ratio"). *See* Guidelines § 2D1.1(a)(3).

■ This court reviews acts of Congress with considerable deference. Acts do not affect principles of substantive due process if they bear "a reasonable relation to the proper legislative purpose and are neither arbitrary nor discriminatory." *United States v. Buckner,* 894 F.2d 975, 978 (8th Cir.1990) (quoting *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934)). This court has not ruled on the constitutionality of the greater penalty schedule for cocaine base as opposed to cocaine, but other circuits that have addressed the issue have rejected constitutional challenges very similar and in some instances identical to those raised by the defendant. In *Buckner,* the Eighth Circuit rejected the defendant's substantive due process challenge to whether the decision by Congress to apply a "100 to 1 ratio" is constitutional, concluding that the ratio of cocaine to cocaine base in the Sentencing Guidelines is rationally related to Congress' objective of protecting the public welfare:

"We do not believe that requiring more severe penalties for crimes involving cocaine base than for those involving cocaine was either arbitrary or irrational. Members of Congress considered cocaine base to be more dangerous to society than cocaine because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence.[9] Senator D'Amato addressed specifically the reasoning underlying the '100 to 1 ratio':

'Because crack is so potent, drug dealers need to carry much smaller quantities of crack than of cocaine powder.

By treating 1,000 grams of feebase [sic] cocaine no more seriously than 1,000 grams of cocaine powder, which is far less powerful than freebase, current law provides a loophole that actually encourages drug dealers to sell the more deadly and addictive substance, and lets them sell thousands of doses without facing the maximum penalty possible.' "

132 Cong.Rec. S8092 (daily ed. June 20, 1986).

9 *See, e.g., "Crack" Cocaine: Hearing* (statement of Sen. Roth, Chair of Subcomm.) ("a frightening and dangerous new twist in the drug abuse problem [is] the growing availability and use of a cheap, highly addictive, and deadly form of cocaine known on the streets as 'crack' "); *id.* at 4 (statement of Sen. Nunn) ("crack cocaine [is] an unprecedented peril to the health and well-being of our Nation"); *id.* at 7 (statement of Sen. Chiles) ("the carnage that [crack] is going to leave in its path is something I don't know if this country can literally survive"); 132 Cong.Rec. S8091 (daily ed. June 20, 1986) (statement of Sen. D'Amato) (citation omitted) ("'crack represent[s] a quantum leap in the addictive properties of cocaine'"); 132 Cong.Rec. S14282 (daily ed. Sept. 30, 1986) (statement of Sen. Kennedy) ("A new, cheaper—and far more dangerous—form of cocaine, called 'crack' or 'rock,' is easier to transport and use"); 132 Cong.Rec. S14293 (daily ed. Sept. 30, 1986) (statement of Sen. Bumpers) ("The recent introduction of 'crack' cocaine, an even more potent and dangerous substance [than cocaine,] has allowed [the] percentage [of children using drugs in the U.S.] to spiral upward").

Several drug abuse experts testified before Congress as to the comparative dangers of cocaine base and cocaine. *See, e.g., "Crack" Cocaine: Hearing,* note 2 *supra.* In explaining the difference between crack and cocaine, Dr. Robert Byck, M.D., Prof. of Psychiatry and Pharmacology, Yale University School of Medicine, stated:

"[I]f you heat [cocaine base] to about the temperature of boiling water, it goes off into a vapor. [Then you can] inhale it into your lungs, and you can take a lot [in]. [By contrast, with cocaine, y]ou can pack your nose only so far.... As long as you keep breath-

ing [the crack] vapor, you can get more dosage into yourself. That is the reason why crack ... is so dangerous. There is an unlimited amount that can go in.

The speed of the material going to the brain is very rapid.... [Y]ou get an intense change in the mood of the individual, which initially is extremely pleasant, and someone wants to repeat it. But because it has gone in so fast, the level drops down quickly, and ... somebody feels terrible.... So you take some more.

... [Y]ou realize that this is going to get you a bit edgy, so you take alcohol along with it. Multidrug abuse is very common.... Taking heroin ... along with crack is fairly common.

So here we have a substance that is tailor-made to addict people. What do we graft on to it? We graft on, first of all, this gigantic import industry of many billions of dollars. Second, our own American marketing methods ... [W]hat we have here is the fast food solution. It is not that McDonald's hamburgers are necessarily better, ... it is the fact that they are already prepared, they are ready to go, and they come in a little package. Here suddenly, we have cocaine available in a little package, in unit dosage, available at a price that kids can pay initially...."

*Buckner,* 894 F.2d 975, 978–79 n. 9.

In *United States v. Cyrus,* the D.C. Circuit also rejected a constitutional challenge to the "100 to 1" ratio of cocaine to cocaine base for sentencing purposes:

"A legislative body need not explicitly state its reason for passing legislation so long as a court can divine some rational purpose. Here, such purposes are readily apparent. Crack is far more addictive than cocaine. It is far more accessible due to its relatively low cost. And it has experienced an explosion of popularity. Any one of these factors would furnish a rational basis for the distinction."

890 F.2d 1245, 1248 (D.C.1989) (citation omitted). Similarly, the Sixth Circuit in *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir.1991), concluded that the dispropor-

tionate sentencing of cocaine base to cocaine does not violate the substantive component of the Due Process clause:

"Given [the] problems caused by the special qualities of crack, it was not irrational for Congress to determine that substantially greater penalties for the sale and distribution of crack were necessary to counter balance a lure of profit that would otherwise attract persons into the crack trade."

■ We reject the defendant's claims and join those circuits holding that Congress' enactment of different penalties for cocaine base and cocaine evinces a rational purpose and does not violate the Due Process clause. Drug abuse is a cancer that threatens society, particularly in the form of increased criminal activity. The highly addictive nature of crack, its growing availability, and relatively low cost all serve to increase the risks associated with its use. *Cyrus,* 890 F.2d at 1248. Congress in its wisdom has chosen to combat the devastating effects of crack cocaine on our society, and we believe the disproportionate sentencing scheme that treats one gram of cocaine base the same as 100 grams of cocaine is rationally related to this purpose.

Our holding is consistent with this court's recent *en banc* decision in *United States v. Marshall,* 908 F.2d 1312 (7th Cir. 1990), *aff'd sub nom. Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), where we concluded that the statute, 21 U.S.C. § 841, and Sentencing Guidelines, 2D1.1(c), are not unconstitutional for basing their computation on the gross weight of a drug and carrier medium. In upholding this court's decision in *Marshall,* the Supreme Court determined that Congress reasonably established a sentencing system based on the "mixture or substance containing a detectable amount" of the prohibited drug:

"By measuring the quantity of the drugs according to the 'street weight' of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who pos-

sess large quantities of drugs, regardless of their purity. That is a rational sentencing scheme."

*Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 1927–28, 114 L.Ed.2d 524 (1991).

### B.

■ The defendant argues that the two-level upward adjustment of his base offense level for obstruction of justice was clearly erroneous. Specifically, the defendant asserts that the district court failed to find by a preponderance of the evidence that he obstructed justice by either committing perjury or suborning the perjured testimony of LaDawana Norris. A trial court's determination that a defendant obstructed justice is finding of fact, and therefore, "our review is under a clearly erroneous standard." *United States v. Brown,* 900 F.2d 1098, 1103 (7th Cir.1990).

Pursuant to Guidelines § 3C1.1, a defendant's offense level is increased by two "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense...." Application Note 1(c), in effect at the time of the defendant's sentencing hearing, provided that "testifying untruthfully or suborning untruthful testimony concerning a material fact ..." is a basis for an obstruction of justice adjustment.[3]

■ Following his arrest on May 19, 1989, the defendant told Detective Spingola that he lived alone at the 2440A North 16th Street address and that no one else had access to the premises as he was the only one who had keys. At this time he stated that he kept the cocaine base for his own personal use and denied any knowledge of the source of the "crack" cocaine found in his apartment. Later that same day, the defendant gave a second statement to Detective Spingola in which he claimed that he had purchased cocaine on consignment from a drug dealer named "Solo" and made crack from the cocaine. In the second statement, he again claimed that the crack

was intended for personal use and that some of the packaging materials which were recovered from the 2440A North 16th Street address were present when he moved into the house. Several months later at trial, the defendant unequivocally denied any knowledge of the drugs which were found inside the residence. Thus, *the defendant provided three different versions regarding the presence of "crack" in his apartment.* LaDawana Norris also offered a fourth inconsistent statement regarding the crack found in Lawrence's apartment. Initially Norris told Officer Riojas that the defendant was selling cocaine and crack out of his apartment. However, at trial she contradicted her statement at the arrest scene and denied that Lawrence was dealing drugs and instead testified that she and "Solo" were the ones responsible for the crack in the apartment.

At sentencing, the trial judge clearly stated his reason for applying a two-level enhancement for obstruction of justice:

"Well, since the standard in a trial, ... is beyond a reasonable doubt, and since the beyond a reasonable doubt standard does not apply to fact finding when it comes to the imposition of sentence, I'm in a little difficult position to now suspend in part the jury's verdict with regard to their findings since that standard was proof beyond a reasonable doubt. And to suggest that the defendant be given the benefit of any doubt with regard to LaDawana Norris's testimony or his own or his two statements to Detective Spingola of the Milwaukee Police Department I think that fails of its own weight [sic] because the jury has found to the contrary on the basis of a standard that is much higher than that which a sentencing court is obliged in employ in its determination as to [whether an obstruction of justice has occurred]. As I read the Guideline and the commentary, it is true that no defendant is obliged under the law to come forth and testify in his or her own defense, nor is any defendant

---

**3.** The Application Notes to § 3C1.1 were amend-    ed November 1, 1990.

obliged to come forth and produce any evidence or testimony. The fact is once that process has been put into place, there are certain consequences that flow from that....

So on the basis of the record that was made, including the comments of [the prosecutor] as well as the court's own recollection of the salient facts, the jury made its findings; and I have absolutely nothing before me to suggest that the jury was in error in their assessment of the totality of the facts and circumstances. And consistent with that I find that I have no alternative other than to adopt the probation department's determination as to the fact that an enhancement in this case of two points be added for obstruction of justice which results in an offense level of 30."

We agree with the trial court and hold that the district court's action in enhancing the defendant's offense level for obstruction of justice was not clearly erroneous.

## IV. CONCLUSION

The decision of the district court is AFFIRMED.