983 F.2d 1073
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Desi TRIPLETT, Defendant-Appellant.
 No. 92-1701.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 9, 1992.*
Decided Dec. 29, 1992.
 
 Before CUDAHY, POSNER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 The first count of a five-count indictment charged defendant Desi Triplett with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The remaining four substantive counts alleged that the defendant distributed 98 grams of cocaine and crack cocaine on four separate occasions in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On June 10, 1991, the defendant pleaded guilty to the conspiracy count in exchange for dismissal of the distribution counts. Approximately one month later, the district court received a letter from the defendant that the court construed as a motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d). The district court held an evidentiary hearing on defendant Triplett's Rule 32(d) motion and denied the requested relief. The district court thereafter sentenced defendant to incarceration for a term of ten years. Triplett appeals the denial of his motion to withdraw his guilty plea, alleging that his plea was not knowing, voluntary, and intelligent. Furthermore, the defendant contends that the government improperly refused to move for a downward departure from his applicable sentencing range under U.S.S.G. § 5K1.1. Finally, the defendant contends that 21 U.S.C. § 841(b)(1) violates his fifth amendment rights to due process and equal protection. We affirm.
 
 I. MOTION TO WITHDRAW GUILTY PLEA
 
 2
 The district court first held a change of plea hearing in this case on June 7, 1991, which the court aborted when Triplett declared that he did not wish to plead guilty after all. During this initial hearing, the district court fully explained that the sentencing range ran from a mandatory minimum of ten years incarceration and a maximum of life imprisonment. The court also explained the fines that could be imposed, and asked the defendant whether he fully understood what he was pleading guilty to and the implications of his plea. When the defendant stated that he did not understand the conspiracy charge, which was the offense that he was pleading to, the court read the Seventh Circuit pattern instruction defining the offense. The defendant then stated that he understood the definition of the crime and that he had no questions. After explaining the sentencing range to the defendant, the district court inquired as to whether the defendant had any illusions that he could serve less than the ten-year mandatory minimum. The defendant stated that he did believe that he would be imprisoned less than ten years because arresting agents had informed him that he would be acquitted and his attorney had informed him that he would likely serve only five years. The judge responded by informing Triplett that if he believed he would be acquitted, he should not plead guilty. Furthermore, the court explained that while a defendant sentenced in state court might not serve the full ten years, "in the Federal Court, when I sentence you to ten years, that means ten years. It doesn't mean you get paroled by doing half of your time and a third of your time." The judge then asked the defendant's attorney if he had indeed told the defendant that he would not have to serve the full ten years, and the attorney stated that he had "run into some difficulties" at the proffer which he intended to go into at the sentencing hearing. The district court then explained to the defendant that regardless of what anyone had told him, the minimum sentence he could receive was "ten years in the penitentiary." The defendant replied that he fully understood what the judge had told him, and that he did not wish to plead guilty under those circumstances. The district judge thereupon informed the parties that he would see them the following Monday for trial.
 
 
 3
 On June 10, 1991, the date of trial, the district judge met with the defendant, defense counsel, and the Assistant United States Attorney ("AUSA") after the defendant indicated that he once again had a change of heart and that he wished to plead guilty. Upon determining that the defendant indeed wished to plead guilty, the court held another hearing to accept the guilty plea. The district court again informed the defendant of his constitutional rights and inquired whether there was anything about his rights or the mandatory minimum and possible maximum sentence that the defendant did not understand. Triplett responded that he had no questions about his rights or his likely sentence. The district court determined that the defendant understood his constitutional rights, the implications of his guilty plea, and the mandatory minimum and maximum possible penalties that he faced. The judge also asked the AUSA and defendant whether there was any plea agreement and the AUSA informed the court that there was none. The court then asked the defendant if he understood that he was pleading "straight up", without a plea agreement. The defendant conceded that he had not entered into any agreements concerning his plea.
 
 
 4
 In response to the district court's request that the government recite its evidence of the defendant's culpability, the AUSA stated that the government could prove at trial that Triplett and Mark Cox sold cocaine and crack cocaine to an undercover agent on four occasions. Triplett took part in the drug sales on three of those occasions, and had a role in the fourth transaction. The defendant conceded that he participated in the drug deals as described by the AUSA and that he understood the implications of his guilty plea.
 
 
 5
 The court also noted that Mark Cox, a co-defendant who had earlier pleaded guilty, had entered into a plea agreement with the government providing that the government was to file a Rule 35 motion to reduce his sentence if he cooperated with government agents. The district judge asked Triplett if he understood that his co-defendant likely would get a better deal by pleading guilty than he would. The defendant replied that he understood that Cox was to receive more favorable treatment. After the court asked the AUSA why Cox would likely benefit from a Rule 35 motion while Triplett was pleading straight up, the AUSA replied that Triplett did not provide truthful information in his proffer, including the source of his cocaine. The AUSA stated that the government could not enter into a plea agreement guaranteeing a reduced sentence for a defendant who did not provide accurate information, such as Triplett, because the government could not use a prevaricating witness to testify against another defendant. The judge then asked Triplett if he had any questions and whether he still desired to plead guilty. The defendant stated that he wished to enter a guilty plea and that he had no questions.
 
 
 6
 Approximately one month after his change of plea, Triplett sent a letter to the district court requesting that he be allowed to withdraw his guilty plea. The defendant asserted in the letter that his attorney had coerced him into pleading guilty by informing him that he would receive a long prison term if he went to trial. The defendant claimed that he did not understand the law and his constitutional rights and suggested that his plea was involuntary. The district court interpreted the letter as a motion to withdraw a guilty plea.
 
 
 7
 At the evidentiary hearing on his Rule 32(d) motion, Triplett testified that his attorney at the time of his change of plea informed him that he would receive a seventeen-year sentence if he was convicted after a trial. Triplett also alleged that his attorney told him that if he pleaded guilty, he might only receive a one or two year sentence. Nonetheless, the defendant also conceded that the court had explained to him at his change of plea that he would receive at least a ten-year sentence of incarceration. Furthermore, the defendant admitted that the prosecutor informed him that he faced a minimum of ten years imprisonment by pleading guilty. The defendant also stated that he knew the consequences of his guilty plea and that he was aware that he thereby waived his constitutional rights. Later during the hearing, the defendant testified that despite the court's unambiguous explanation of the mandatory minimum sentence, he harbored hopes that he would be sentenced to less than a year.
 
 
 8
 The district court denied the defendant's motion to withdraw his guilty plea, and found that the minimum mandatory sentence had been clearly explained to the defendant on several occasions and that the defendant had entered the plea voluntarily, knowingly, and intelligently. The court noted that the defendant was an intelligent person who had completed one year of college and that he had retained counsel. The court further noted that the defendant's testimony strongly suggested that the actual reason for his attempt to withdraw his guilty plea was his unhappiness with having his bond revoked on the day of the plea change.
 
 
 9
 Rule 32(d) of the Federal Rules of Criminal Procedure requires that a defendant provide a "fair and just reason" for the withdrawal of a guilty plea prior to sentencing. The decision whether to allow withdrawal of a guilty plea is within the sound discretion of the trial court, and we will reverse that decision only on a showing of abuse of discretion. United States v. Caban, 962 F.2d 646, 649 (7th Cir.1992); United States v. Scott, 929 F.2d 313, 315 (7th Cir.1991). On appeal, the defendant has raised only two arguments challenging the district court's ruling. First, Triplett claims that because he did not receive a reduced sentence, the alleged benefit of his bargain with government agents, he is entitled to withdraw his plea. Second, the defendant contends that he should be allowed to withdraw his plea because the district court failed to inform him that he would not be entitled to parole under the Sentencing Guidelines.
 
 
 10
 The defendant contends that he should have been allowed to withdraw his guilty plea because he pleaded guilty in detrimental reliance on promises made by arresting agents that he would receive a lower sentence if he assisted the government. Nothing in the record, however, supports the defendant's allegation that he was promised a reduction in his sentence. At the hearing on the defendant's motion to withdraw his guilty plea, the defendant testified that the discussion concerning a reduction in sentence occurred on the day he originally was to plead guilty, June 7, 1991. To receive the benefit of the government's offer, however, the defendant was required to render the government substantial assistance in exchange for a U.S.S.G. § 5K1.1 motion. Immediately after his arrest but prior to any discussions with the AUSA concerning a motion to reduce his sentence, the arresting agents allegedly told the defendant that he would not be charged if he provided them with the name of his supplier and assisted them by buying cocaine from a suspect named Victor Taylor. The defendant was unable to arrange a buy from Taylor and the government determined that he had lied about the identity of his supplier.
 
 
 11
 At his June 10, 1991, plea withdrawal hearing, the defendant acknowledged that he was pleading without the benefit of any plea agreement. When the district court inquired as to the reason Triplett's co-defendant benefitted from an agreed upon sentence reduction, the government revealed that the co-defendant had substantially assisted the government's investigation while the defendant had not only failed to provide substantial assistance, but he had provided inaccurate and misleading information. The defendant has not alleged that he provided any "assistance" other than the attempted drug buy that he could not complete.
 
 
 12
 Generally, the government's decision to make or withhold a section 5K1.1 motion for a downward departure based upon substantial assistance is a form of prosecutorial discretion that is reviewable only if the decision was based on an unconstitutional motive. Wade v. United States, 112 S.Ct. 1840, 1843-44 (1992). We have noted, however, that if a prosecutor makes and does not keep a promise that he will move for a section 5K1.1 departure in exchange for a guilty plea, and the promise is material to the plea, the defendant must be allowed to withdraw his plea because the plea is involuntary. United States v. Burrell, 963 F.2d 976, 985 (7th Cir.), cert. denied, 113 S.Ct. 357 (1992); United States v. Smith, 953 F.2d 1060, 1066 (7th Cir.1992).
 
 
 13
 Defense counsel alleges in his appellate brief that the prosecutor had made and broken a deal to make a section 5K1.1 motion in exchange for Triplett's guilty plea. The record, however, establishes otherwise. At his June 10, 1991, change of plea, the defendant acknowledged that he was pleading straight up without a plea agreement. After the government informed the court that they could not make a section 5K1.1 motion due to the defendant's untruthfulness during his proffer, the court asked the defendant whether he had been truthful. The defendant responded that he did "[t]he best that [he] could" in being truthful. After defense counsel insisted that the defendant had "substantially assisted" the government, the district court noted at the sentencing hearing that it was clear that no agreement to move for a sentence reduction or a Guidelines departure existed. The court further stated, "[B]ased on what I've heard here, based on what I've seen, I have serious question in my mind as to whether the defendant was truthful with the Government."
 
 
 14
 The defendant's testimony does not refute the district court's finding that there was no agreement to move for sentence reduction and that the defendant did not render substantial assistance to the government. The defendant simply asserted that he "cooperated ... [t]he best that [he] could." At the aborted June 7, 1991, change of plea hearing, the defendant testified that government agents told him he would be "acquitted" of the charges against him. The court responded that "If you're going to be acquitted, you don't plead guilty." The defendant has never alleged during his testimony that government agents promised him a reduced sentence, only defense counsel has made such an allegation, without specifying any part of the record that would support such a claim. The only apparent understanding between the government and the defendant was that a guilty plea to the conspiracy charge would result in a dismissal of the four distribution counts. The government dismissed the four remaining counts as promised.
 
 
 15
 Triplett also contends that he did not knowingly enter his guilty plea because the district court failed to advise him that he would not be entitled to parole under the Sentencing Guidelines. Defense counsel alleges that such a failure violates the requirements of Rule 11, but counsel does not identify any language in Rule 11 that imposes such a requirement on district courts. In Key v. United States, 806 F.2d 133 (7th Cir.1986), we held that Rule 11 does not require disclosure of ineligibility or eligibility for parole, although we encouraged trial judges to "engage in a meaningful colloquy on the subject." Id. at 137 n. 4. The district court repeatedly advised the defendant that he faced a mandatory minimum sentence of ten years incarceration if he pleaded guilty and a five year minimum of supervised release. Rule 11 did not oblige the court to explicitly inform the defendant that he was ineligible for parole under the Sentencing Guidelines. Nonetheless, we reiterate our statement in Key that a meaningful colloquy on parole ineligibility is advisable.
 
 
 16
 That the defendant harbored secret, hidden expectations concerning his sentence at odds with the district court's unambiguous and thorough explanation is not a "fair and just reason" for withdrawal of his guilty plea under Rule 32(d). As we have stated numerous times, to protect the integrity of the judicial process and to deter abuses in Rule 32(d) guilty plea withdrawals, " 'rational conduct requires that voluntary responses made by a defendant under oath [when entering a guilty plea] ... be binding." United States v. McFarland, 839 F.2d 1239, 1242 (7th Cir.) (quoting United States v. Ellison, 835 F.2d 687, 693 (7th Cir.1987)), cert. denied, 486 U.S. 1014 (1988). Nothing in the record supports the defendant's present claim that the government agreed to file a section 5K1.1 motion in exchange for his guilty plea. The district court did not abuse its discretion when it refused to allow Triplett to withdraw his guilty plea.
 
 
 17
 II. MOTION FOR DEPARTURE UNDER SECTION 5K1.1 OF THE
 
 SENTENCING GUIDELINES
 
 18
 Section 5K1.1 of the Guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. The defendant contends that his initial cooperation with the arresting agents constituted substantial assistance to the government, and that the government agreed to make a section 5K1.1 motion for his cooperation.
 
 
 19
 No written plea agreement memorialized a promise that the government would make a section 5K1.1 motion, and there is no evidence that the government made or breached an oral agreement with the defendant. When he entered his guilty plea, the defendant testified that he was pleading straight up, without the benefit of a plea agreement. Without the benefit of such a plea agreement, we only have authority to review the government's refusal to file a substantial assistance motion if the refusal was based on an unconstitutional motive such as racial or religious animus. Wade v. United States, 112 S.Ct. 1848, 1844 (1992). Other than his unsupported claim that he had an oral agreement with government agents, the defendant has not alleged that the government harbored any impermissible motive for withholding a section 5K1.1 motion. The district court did not commit error in finding that the defendant had no agreement with the government concerning the filing of a section 5K1.1 motion.
 
 
 20
 III. EQUAL PROTECTION AND DUE PROCESS CHALLENGES
 
 
 21
 For the first time on appeal, the defendant argues that the mandatory minimum sentencing scheme set forth in 21 U.S.C. § 841(b) is unconstitutional because it makes a distinction between cocaine powder ("cocaine") and cocaine base ("crack cocaine"). First, the defendant argues that this distinction disproportionately punishes blacks in violation of the equal protection component of the fifth amendment due process clause. Second, the defendant asserts that the "100 to 1" ratio of crack cocaine to cocaine set forth in section 841(b)(1) violates the due process clause. By failing to argue in its brief that the defendant had waived the constitutional challenge by neglecting to raise it in the district court, the government has waived waiver as a defense. United States v. Leichtnam, 948 F.2d 370, 375 (7th Cir.1991); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).
 
 
 22
 In his constitutional arguments, the defendant contends that the mandatory minimum sentence scheme in 21 U.S.C. § 841(b)(1), which treats crimes involving crack cocaine more harshly than those involving other forms of cocaine, disproportionately punishes blacks. In United States v. Lawrence, 951 F.2d 751 (7th Cir.1991), we rejected the defendant's argument that the sentencing scheme set forth in 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1(a)(3), which treats one gram of crack cocaine as equivalent to 100 grams of cocaine, violated due process because it was an arbitrary and irrational decision. Defense counsel's request that we reconsider our holding in Lawrence is not well taken, particularly because the two district court opinions counsel relies on were reversed months before counsel filed his brief on July 16, 1992. See United States v. Osburn, 955 F.2d 1500 (11th Cir.) (a March 23, 1992, decision reversing the district court's finding that the Guidelines' drug quantity table's treatment of a marijuana plant as equivalent to 1,000 grams of marijuana was arbitrary), cert. denied, 113 S.Ct. 223 (1992); United States v. Lee, 957 F.2d 778 (10th Cir.) (a February 24, 1992, decision reversing the district court's ruling that 21 U.S.C. § 841(b)(1)'s mandatory minimum sentence for possession of 100 or more marijuana plants violated equal protection), cert. denied, 61 U.S.L.W. 3355 (U.S.1992). We decline the defendant's request that we overturn Lawrence, and we thereby reject his due process argument.
 
 
 23
 In his equal protection argument, the defendant alleges that the mandatory minimum sentencing scheme contained in 21 U.S.C. § 841(b)(1) violates the equal protection component of the fifth amendment due process clause because it has a disproportionate impact on blacks, who are more likely to use crack cocaine than caucasians. Nonetheless, to establish a valid equal protection claim, one must show more than a disproportionate impact. "[E]ven if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." Personnel Adm'r v. Feeney, 442 U.S. 256, 272 (1979); see also United States v. Galloway, 951 F.2d 64, 65 (5th Cir.1992); David K. v. Lane, 839 F.2d 1265, 1272 (7th Cir.1988). Thus, the dispositive question in the equal protection context is whether the defendant has shown that a racially-based "discriminatory purpose has at least in some part shaped" the adoption of mandatory minimum sentencing for possession with the intent to distribute crack cocaine. Feeney, 442 U.S. at 276.
 
 
 24
 In Lawrence, we rejected the defendant's equal protection and due process challenges after discussing Congress' intent in choosing a more severe penalty for crack distribution. We found that Congress' enactment of different penalties for crack cocaine and cocaine evinced a rational purpose. See Lawrence, 951 F.2d at 754-56. In support of his claim that the mandatory minimum sentence contained in section 841(b)(1) violates equal protection, the defendant discusses an affidavit filed in a Georgia district court suggesting that the majority of those convicted of crack offenses in the Northern District of Georgia were black males. In addition, Triplett cites several cases in which crack offenders received lengthier sentences than those convicted of cocaine offenses. The defendant's belated and anecdotal evidence of the discriminatory impact of the mandatory minimum sentencing scheme for crack offenses is vague and unsuggestive of discriminatory intent. We therefore review the sentencing scheme for crack cocaine under the "rational basis" test. See Rodgers v. Lodge, 458 U.S. 613, 617 n. 5 (1982) ("Purposeful discrimination invokes the strictest scrutiny of adverse differential treatment. Absent such purpose, differential impact is subject to the test of rationality."). In Lawrence, we determined that the greater penalty scheme for crack cocaine as opposed to cocaine bore a rational relationship to a legitimate end. Lawrence, 951 F.2d at 755. The defendant has presented no evidence suggesting that our determination was incorrect. See also Galloway, 951 F.2d at 66 (court found a rational relationship in disparity in crack cocaine and cocaine sentencing provisions that furthered a legitimate government purpose); United States v. Thomas, 900 F.2d 37, 39 (4th Cir.1990) (holding that the mandatory minimum sentence for crack cocaine under 21 U.S.C. § 841(b). withstands equal protection challenge).
 
 
 25
 Accordingly, we AFFIRM the defendant's sentence as well as the district court's decision to deny the defendant's motion to withdraw his guilty plea.
 
 
 
 *
 After a preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs