42 F.3d 1392
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terence AUTMAN, Defendant-Appellant.
 No. 93-3917.
 United States Court of Appeals, Seventh Circuit.
 Argued June 2, 1994.
Decided Dec. 12, 1994.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury found defendant-appellant Terence Autman ("Autman") guilty of possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). Autman raises a number of issues on appeal. We affirm.
 
 I.
 
 2
 On March 11, 1993, around noon, Marlon Heatherington ("Heatherington"), a confidential informant for the Bureau of Alcohol, Tobacco and Firearms ("ATF"), placed a three-way call from his car phone in Kankakee, Illinois. Heatherington first called ATF Special Agent Barnette ("Barnette"), and then Autman, at his parents' home ("the Autman home"). Barnette was in his office in Oak Brook; he listened to and taped the call without Autman's knowledge. The entire conversation was played for the jury. In that conversation, Heatherington asks Autman if he is "still going today," and tells him, "I probably want to uh, get me at least an ounce or sumpin." Def.'s App. B. The two then exchange beeper numbers, and Heatherington asks Autman to call him before he leaves.
 
 
 3
 Heatherington had been cooperating with ATF as a confidential informant since December 1991; apparently state criminal charges relating to drugs were dismissed in early 1992, due to his cooperation. Heatherington had prearranged the call with Barnette; the purpose of the call was to tell Autman that he wanted to buy an ounce of cocaine. Heatherington had known Autman for approximately two years, and had spent much time with Autman at the Autman home.
 
 
 4
 Heatherington testified that around 2:00 p.m., Autman called Heatherington and told him to bring him the money because Autman was getting ready to leave. Heatherington called Barnette to let him know, and then went to the Autman home. When he arrived, Autman gestured him into a car that was parked by the house. Autman and another man were in the car, speaking on their cellular phones. The man gave Autman some money in a plastic bag and left, and Heatherington and Autman went into the house. Autman asked if he could use Heatherington's car. The two exchanged car keys, and Heatherington gave Autman $1000, which he put into the bag with the other money. Heatherington then left and phoned Barnette, giving Barnette a description of his car.
 
 
 5
 Barnette subsequently set up surveillance at the Chicago location where Heatherington suggested Autman was going to purchase the cocaine. Barnette testified that later, he saw a car matching the description of Heatherington's car; it was the same color and make, and had tinted windows. There appeared to be one person in the car. He attempted to follow the car, but lost it. Barnette called Heatherington approximately forty-five minutes later, and set up surveillance at a different location, along an often travelled route from Chicago to Kankakee.
 
 
 6
 Heatherington testified that after 7:00 p.m., Autman called Heatherington and told him he should come and get the cocaine. Heatherington called Barnette, who told him to stall for a short time. Heatherington waited about fifteen minutes, and then went to the Autman home. Autman was leaving in Heatherington's car, and Heatherington stopped him on the road. Autman said he was going to a tavern, that Heatherington could go into his house, and that his sister, Tamara, knew where the cocaine was. Heatherington was let into the house by Autman's father and then went to Tamara's bedroom and asked if Autman had "left something for me." Tamara told him where to look, and he took one small bag (there were a number of other bags) out of a larger plastic bag that was on a shelf. Heatherington left and called Barnette, and shortly thereafter turned over the cocaine to Barnette at the police department. Barnette then obtained a search warrant for the Autman home.
 
 
 7
 The police found a shoe box in the corner of Tamara's bedroom that contained a number of plastic bags of cocaine base ("crack"), a plastic bag with five smaller bags of crack under a stereo stand, and a plastic bag filled with $3000 in the closet. The amount of crack found by the police exceeded 235 grams. The Deputy Chief of the Kankakee Police Department testified that this amount of crack would not be for personal use, but rather for distribution.
 
 
 8
 Barnette testified that at the Autman home, Autman told him that the drugs were his. Three of Autman's fingerprints were found on the outside of the shoe box, and on one of the plastic bags of crack from inside the box.
 
 
 9
 Defense witnesses presented a different version. Autman's father testified that Heatherington let himself into the house around 4:00, and that no one else was in the house except for one of the father's friends. Heatherington entered the house with a paper bag, went to Tamara's room, and left without the bag. Tamara testified that Heatherington came into her room sometime after 5:00, carrying two plastic bags; he put one on a stereo stand and the other in a shoe box, and then left. About thirty minutes later (Tamara testified that it was now after 8:00), Autman came into Tamara's room, she told him Heatherington had "left some things," Autman looked, and then left. Marlo Hill, Tamara's boyfriend, testified that Heatherington came into Tamara's room around 8:00 with a plastic bag. Heatherington took something out of the bag and put it under a stereo stand and in a shoe box. Autman came in approximately thirty minutes later, Tamara told him Heatherington had left something, Autman looked, and then left. In light of this testimony, the defense theory was that Heatherington planted the cocaine to set up Autman.
 
 
 10
 Both Tamara and Hill wrote out statements at the Autman home that evening. In her statement, Tamara said that the drugs were Autman's. Tamara did not tell the police that Heatherington had been in her room. At trial, she alleged that Barnette threatened to take away her child if she did not write a statement incriminating her brother, and that Barnette dictated the statement to her. Barnette denied her allegations. In his statement, Hill said that he was facing Tamara's bedroom wall and saw nothing.
 
 II.
 A. Sufficiency of the Evidence
 
 11
 Autman argues that Heatherington was not a credible witness, that Barnette's testimony contradicted Heatherington's and changed over the course of his examination, and that it is impossible, when one considers the times of the telephone calls between Barnette and Heatherington, that Heatherington was meeting with Autman in Kankakee to give him money, and that Barnette also observed a car supposedly driven by Autman in Chicago.
 
 
 12
 We view the evidence in the light most favorable to the government; if any rational trier of fact could find Autman guilty beyond a reasonable doubt, we will not disturb the jury's verdict.
 
 
 13
 Any questions of Heatherington's credibility were for the jury to decide. We do not find any inconsistencies in testimony apparent, but even if inconsistencies exist, they are not significant.[1] Further, the transcript does not support Autman's assertion that the testimony was incredible because it showed he was in two places, far from each other, at almost the same time. Autman asserts that "Barnette testified to seeing the same car, at the same time [after Heatherington gave Autman the money], in a location he said was 1 1/2 to 2 1/2 hours away from Kankakee." Def.'s Br. at 19. In fact, Barnette testified that, depending on traffic, it is a one to two hour drive from Oak Brook to Kankakee. Tr. at 101. We note that it is fifty-six miles from Kankakee to Chicago. 1993 Rand McNally Road Atlas at 28. Heatherington testified that he met Autman with the money around 2:00. Barnette testified that sometime later, he lost the car matching the description of Heatherington's car.[2] The character of the witnesses' estimation of time regarding the phone call and the sighting of the car is too indefinite so as to lend merit to Autman's physical impossibility argument.
 
 
 14
 Finally, Judge Baker stated during sentencing that "I have no hesitation at all in saying that I believe the jury was justified in finding beyond a reasonable doubt that this defendant was guilty of possession of the crack cocaine with intent to distribute it." Tr. at 455.
 
 
 15
 After reviewing the trial transcript, we conclude that there was sufficient evidence for the jury to find Autman guilty beyond a reasonable doubt.
 
 B. Challenge to the Venire
 28 U.S.C. Sec. 1867(a) provides:
 
 16
 In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title [the Jury Selection and Service Act of 1968, 28 U.S.C. Sec. 1861 et seq.] in selecting the grand or petit jury.
 
 
 17
 After the venire was sworn, Autman's counsel stated that out of "41 potential jurors there is one black juror that I was able to determine. We would suggest that that is not a sufficient representative sample of the community in this district and indicate that the defendant in this case is a minority. I would simply indicate for the record there is an insufficient number of minorities present from the potential jury panel." Tr. at 69-70. The motion was denied as untimely. Autman argues that he could not have had the basis for an objection until he actually viewed the potential jurors.
 
 
 18
 The exclusive remedy provided by Sec. 1867 is a motion to stay the proceedings. United States v. Raineri, 670 F.2d 702, 707 (7th Cir.), cert. denied, 459 U.S. 1035 (1982). Such a motion must contain "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title...." 28 U.S.C. Sec. 1867(d); United States v. Percival, 756 F.2d 600, 613-615 (7th Cir.1985); United States v. Grose, 525 F.2d 1115, 1119 (7th Cir.1975), cert. denied, 424 U.S. 973 (1976). In addition, "[s]o long as the master jury wheel is adequate and the prescribed procedure is thereafter followed, there can be no complaint that the panel ultimately produced by random selection is somehow unrepresentative in result." Percival, 756 F.2d at 615.
 
 
 19
 The district court may well have been correct in its application of the statute with respect to timeliness. In any event, the defense attorney's observation that blacks were underrepresented on the specific panel is not enough to support a claim that jury selection in the Central District of Illinois is improper. Grose, 525 F.2d at 119. We conclude that Autman failed to present a proper challenge to jury selection procedures.
 
 C. Penalty Structure for Cocaine Base
 
 20
 21 U.S.C. Sec. 841(b) and Sec. 2D1.1(c) of the Sentencing Guidelines treat one gram of crack the same as one hundred grams of cocaine for sentencing purposes. Autman contends that this penalty structure for crack violates the Due Process Clause, the Equal Protection Clause, and the Eighth Amendment because almost 100% of crack defendants are black.[3]
 
 
 21
 This court has previously held that "100 to 1 Ratio" is not arbitrary so as to violate the Due Process Clause. United States v. Lawrence, 951 F.2d 751 (7th Cir.1991). This court has also rejected a disparate impact challenge to the sentencing scheme. United States v. Chandler, 996 F.2d 917 (7th Cir.1993). Just as the defendant in Chandler, Autman does not suggest any evidence that Congress or the Sentencing Commission acted with discriminatory intent. "[E]ven if a neutral law has a disproportionately adverse impact upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose.' " Id. at 918 (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979).
 
 
 22
 Autman suggests that we reconsider our previous rulings on the subject. However, we see no reason to disturb the holdings in Lawrence and Chandler, and conclude that Autman's claim must be rejected.
 
 D. Presentence Report
 
 23
 Autman states that he raised twelve objections to the presentence report. He claims that the district judge violated Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure,[4] because he "failed to either make a finding as to each allegation or indicate why no determination was necessary."
 
 
 24
 In the Order on Final Disposition, the court specifically discussed three objections, which counsel had orally argued at the final disposition hearing. These were objections (1) that the enhancement of penalties for dealing crack as opposed to powdered cocaine is unconstitutional, (2) to the recommended enhancement for obstruction of justice, and (3) to the recommended enhancement for the presence of firearms. The court found in favor of Autman on the latter two, and concluded, "[i]n all other regards the objections by the defendant are overruled. The court accepts the presentence report paragraphs 1 through 71, with the exceptions of paragraphs 21 and 24, which the court has rejected heretofore." Dec. 6, 1993 Order at 3. The court had, at the final disposition hearing, also noted that "the fact that the presentence report recites evidence with which the defendant disagrees is no basis for an objection and arguing credibility of witnesses to me is not fruitful because the jury had that function and the jury decides the credibility of the witnesses." Tr. at 417.
 
 
 25
 Analyzing Autman's claim is somewhat difficult. The district judge did address the three matters referred to. The presentence report was apparently amended to some extent after Autman's objections were filed.[5] Autman's counsel did not point out specifically the objections which survived. In any event his other allegations of factual inaccuracy are for the most part disputes with the version of the facts which the jury must have found in deciding on a guilty verdict. Indeed Autman's brief explains, "[t]hese are matters which went directly to the jury's conclusion that the crack cocaine was possessed with the intent to distribute." Def.'s Br. at 29. He has not shown that any of the allegations were relevant to the application of the Guidelines. They seem only to be attacks on the credibility of those witnesses whose testimony supported conviction, and thus a challenge to the evidence which supports conviction. We do not believe that the drafters of Rule 32 intended that objections by a defendant to the accuracy of facts the jury must have found as a basis for conviction, and not otherwise relevant to sentencing, would trigger a duty by the judge to make a specific finding in response or even to make an express determination that the facts are irrelevant to sentencing.
 
 
 26
 Although it would be necessary to remand for findings concerning outstanding allegations of factual inaccuracies relevant to sentencing, Autman has not demonstrated that there are any beyond those properly addressed by the district court.
 
 
 27
 Accordingly, we AFFIRM.
 
 
 
 [1]
 Autman argues that there was inconsistent testimony regarding the number of times that Heatherington was used as an informant; whether Autman was a paid informant; and whose money was used to pay Autman for the cocaine
 Autman also suggests that it is not clear that he was on the phone. This assertion is not persuasive. Heatherington called the Autman home, Autman's sister, Tamara, answered the phone, and Heatherington asked where her brother Terence was. She replied "in the bathroom," and then said, "he's out now. Hold on." A male then has a conversation with Heatherington.
 
 
 [2]
 Barnette testified that he saw the car approximately three hours after the phone conversation, and shortly after testified that he lost the car at approximately 2:30 to 3:00. Tr. at 99-100
 
 
 [3]
 Autman relies in large part on testimony given at the final disposition that a majority of crack defendants in Kankakee are black
 
 
 [4]
 Rule 32(c)(3)(D) provides:
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter make available to the Bureau of Prisons.
 
 
 [5]
 Nine objections by Autman were noted and answered by the probation officer in an addendum to the presentence report