In the

# United States Court of Appeals
### For the Seventh Circuit

No. 10-2261

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RODERICK MOORE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 584—**Ruben Castillo**, *Judge.*

ARGUED MARCH 30, 2011—DECIDED JUNE 3, 2011

Before FLAUM, WOOD, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Roderick Moore pled guilty to distributing more than 50 grams of crack cocaine in violation of 21 U.S.C. § 841. He challenges the constitutionality of the penalties set forth in that section, which, at the time he was sentenced, punished those dealing in crack cocaine 100 times more severely that those dealing in powder cocaine. The district court rejected Moore's argument that the crack-powder disparity

violates his Due Process and Equal Protection rights. Because there remains at least some evidence that crack cocaine is more dangerous than powder cocaine, we conclude that the sentencing scheme survives rational basis review and affirm the judgment of the district court.

## I. Background

Moore was arrested on federal drug trafficking charges on July 30, 2008, after he was recorded selling both crack and powder cocaine to a cooperating defendant and an undercover officer on separate occasions. A federal grand jury returned an indictment against Moore on August 27, 2008, charging him with distributing more than 50 grams of cocaine base in the form of crack cocaine and distributing an unspecified amount of powder cocaine, both in violation of 21 U.S.C. § 841(a)(1). Moore sought to have the indictment dismissed, arguing that the crack-powder disparity codified at 21 U.S.C. § 841(b)—which punishes crack cocaine offenses 100 times more severely than powder cocaine offenses—violated his Fifth and Eighth Amendment rights. The district court denied the motion without briefing or a hearing, concluding that Moore's challenges were foreclosed by this Court's precedents.

Moore accepted responsibility for the recorded sales, as well as another unrecorded sale, making him account-able for a total of 253.2 grams of cocaine base ("crack") and 374.6 grams of powder cocaine. He entered a conditional guilty plea, allowing him to appeal the denial of the motion to dismiss the indictment. On May 11, 2010,

the district court sentenced Moore to the ten-year manda-
tory minimum sentence that applied to violations in-
volving 50 or more grams of crack cocaine at that time.[1]
*See* 21 U.S.C. § 841(b)(1)(A)(iii). Moore appeals the
denial of his motion to dismiss the indictment based on
the Fifth Amendment arguments he made below; he
has abandoned his Eighth Amendment claim.

## II. Discussion

We review the constitutionality of a statute, which is
a question of law, de novo. *United States v. Olofson*, 563
F.3d 652, 659 (7th Cir. 2009). Moore challenges the con-
stitutionality of the crack-powder disparity, which was
enacted as part of the Anti-Drug Abuse Act of 1986 and
remained the law at the time he was sentenced, on two
grounds. First, Moore argues that the 100-to-1 ratio is
arbitrary and irrational, in violation of his right to sub-
stantive due process. Second, Moore contends that
the crack-powder disparity has a disparate impact on
African-American defendants, in violation of the Equal
Protection clause of the Fifth Amendment. Moore
concedes that we have considered and rejected similar
arguments in the past, *see United States v. Lawrence*, 951
F.2d 751 (7th Cir. 1991); *United States v. Chandler*, 996 F.2d
917 (7th Cir. 1993), but maintains that data not available

---

[1] Congress amended § 841(b)(1)(A)(iii) with the passage of
the Fair Sentencing Act of 2010 ("FSA") on August 3, 2010.
The ten-year mandatory minimum sentence now applies to
offenses involving 280 grams or more of crack cocaine.

to us at the time of those prior rulings compels a different outcome today.

## A. Substantive Due Process Challenge

We review acts of Congress with "considerable deference." *Lawrence*, 951 F.2d at 754. The penalty scheme at issue does not encroach on a fundamental right, *see Chapman v. United States*, 500 U.S. 453, 464-65 (1991), and therefore we apply a rational basis standard of review, *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). The pertinent inquiry is whether the crack-powder disparity bears a reasonable relation to any proper legislative purpose.

As the Supreme Court explained in *Kimbrough v. United States*, 552 U.S. 85, 95 (2007), Congress adopted the 100-to-1 ratio based on its belief "that crack was significantly more dangerous than powder cocaine." That belief was based on evidence indicating that "(1) crack was highly addictive; (2) crack users and dealers were more likely to be violent than users and dealers of other drugs; (3) crack was more harmful to users than powder, particularly for children who had been exposed by their mothers' drug use during pregnancy; (4) crack use was especially prevalent among teenagers; and (5) crack's potency and low cost were making it increasingly popular." *Id.* at 95-96.

This Court, and others, similarly relied on that evidence in upholding the sentencing scheme, reasoning that punishing crack offenses more severely than powder

cocaine offenses is rationally related to the government's legitimate interest in protecting the public from the dangers of crack cocaine. *See Lawrence,* 951 F.2d at 755 (based on the risks associated with crack, including its "highly addictive nature . . ., its growing availability, and [its] relatively low cost," concluding that the 100-to-1 ratio was rationally related to Congress's purpose of combating the drug's effects); *United States v. Stevens,* 19 F.3d 93, 97 (2d Cir. 1994) ("the greater accessibility and addictiveness of crack" provides a rational basis for the crack-powder disparity); *United States v. Bynum,* 3 F.3d 769, 774 (4th Cir. 1993) ("the 100-to-1 ratio . . . is rationally related to a legitimate government end, because crack is a greater threat to society" than is powder cocaine); *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir. 1991) (concluding that the "problems caused by the special qualities of crack" provided a rational basis for the disproportionate sentencing scheme); *United States v. Buckner,* 894 F.2d 975, 978-80 (8th Cir. 1990) (holding that the crack-powder disparity is rationally related to Congress's objective of protecting the public welfare, in light of Congress's belief that crack is "more dangerous to society than cocaine"); *United States v. Catchings,* 922 F.2d 777, 780 n.3 (11th Cir. 1991) (per curiam) ("[T]he difference in penalties between crack and other forms of cocaine demonstrated that Congress considered crack to be a more powerful and dangerous drug.").

Moore contends that data amassed by the Sentencing Commission and others over the past twenty years demonstrates that Congress relied on flawed evidence in concluding that crack is more dangerous than powder

cocaine, and in arriving at the 100-to-1 differential. It is true that where "a statute [is] predicated upon the existence of a particular state of facts" (as the instant statute is based on the belief that crack is more dangerous than powder cocaine), its constitutionality "may be challenged by showing to the court that those facts have ceased to exist." *United States v. Carolene Products Co.*, 304 U.S. 144, 153-54 (1938). However, such a challenge will fail where it is even debatable that the classification is rational, because, where that is the case, the decision is one for Congress. *Id.* at 154. To succeed, therefore, Moore must demonstrate that Congress has no reasonable basis for believing that crack is more dangerous than powder cocaine. *Vance v. Bradley*, 440 U.S. 93, 111 (1979).

Moore fails to make that formidable showing. He relies on a series Sentencing Commission reports advocating the abandonment of the 100-to-1 ratio. As the *Kimbrough* Court noted, for the past decade and a half, the Commission has consistently recommended that Congress alter the ratio, calling for a 1-to-1 ratio in 1995, a 5-to-1 ratio in 1997, and lowering the ratio "at least" to 20-to-1 in 2002. 552 U.S. at 99. The Commission also has reported that some of the specific evidence of crack's dangerousness on which Congress relied was incorrect. For example, in 2002, the Commission reported that, contrary to the 1986 Congress's understanding, "prenatal exposure to crack cocaine produces identical effects as prenatal exposure to powder cocaine and is far less devastating than previously reported." The Commission further reported that crack is associated

with "significantly less trafficking-related violence . . . than previously assumed," and that "the epidemic of crack cocaine use by youth never materialized to the extent feared." *Kimbrough*, 552 U.S. at 98 (citations omitted).

There can be no dispute that this evidence undermines some of the assumptions on which the 100-to-1 ratio originally was based. However, the Sentencing Commission reports also contain findings indicating that crack is at least somewhat more dangerous than powder cocaine. For example, in 2002, the Sentencing Commission reported that "crack is more addictive than powder, crack offenses are more likely to involve weapons or bodily injury, and crack distribution is associated with higher levels of crime." *Id.* Similarly, the Commission's 2007 report states that while "weapon involvement . . . is present in only a minority of both powder cocaine and crack cocaine offenses[,] . . . crack cocaine offenses continue to involve this conduct more often than powder cocaine offenses." The 2007 report further notes that violence is more prevalent in crack cocaine cases than in powder cocaine cases, and that "the risk of addiction and personal deterioration may be greater for crack cocaine than for powder cocaine because of their different methods of usual administration (typically crack cocaine is smoked whereas powder cocaine typically is snorted)." Thus, the Sentencing Commission reports on which Moore relies demonstrate a rational basis for punishing crack offenses more harshly than powder cocaine offenses.

Moore's primary position is that the 100-to-1 ratio is too high. But that argument relates to the wisdom of the

approach Congress selected to address the problems associated with crack cocaine, something we have no authority to second-guess. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993). As such, whether we believe another approach to the issue—such as a lower crack-to-powder ratio—would be preferable is irrelevant to our analysis. *Heller v. Doe*, 509 U.S. 312, 330 (1993). Because Moore has not demonstrated that the crack-powder disparity "rests on grounds wholly irrelevant to the achievement of [Congress's] objective," it survives rational-basis review. *Id.* at 324 (internal quotation omitted).

### B.  Equal Protection Challenge

Moore also contends that the 100-to-1 ratio discriminates against African Americans in violation of the Equal Protection clause of the Fifth Amendment. In support, he points to evidence indicating that the majority of offenders convicted of crack cocaine offenses—and thus the majority of those subject to the more severe crack cocaine penalties—are African American.

Rational basis review applies to Moore's equal protection challenge unless he can demonstrate that Congress acted with discriminatory intent in enacting the crack-powder differential, in which case heightened scrutiny applies. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). Discriminatory intent implies more than mere "awareness of consequences." *United States v. Chandler*, 996 F.2d 917, 918 (7th Cir. 1993). It means that the decision maker "selected or reaffirmed a par-

ticular course of action at least in part 'because of', not merely 'in spite of', its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279.

Moore argues that disparate impact alone is sufficient to show discriminatory purpose here. The Supreme Court has recognized that in some "rare" cases, evidence of discriminatory impact alone is sufficient to establish intent to discriminate. *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266 (1977). But evidence of disparate impact will be accepted as the sole proof of discriminatory intent only where it demonstrates a "stark … pattern" of discriminatory impact that is "unexplainable on grounds other than race." *Id.*[2]; s*ee also McCleskey v. Kemp*, 481 U.S. 279, 293-94 (1987) ("statis-

---

[2] Citing as examples *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (finding that ordinance prohibiting operation of laundries in wooden buildings without a permit violated the Equal Protection clause because it was administered in a manner that discriminated against Chinese permit applicants); *Guinn v. United States*, 238 U.S. 347 (1915) (invalidating, under the Fifteenth Amendment, statute imposing a literacy requirement on voters that contained a "grandfather clause" applicable to individuals and their lineal descendants entitled to vote "on [or prior to] January 1, 1866" because it could not be explained except as an attempt to circumvent the amendment); *Gomillion v. Lightfoot*, 364 U.S. 339, 340 (1960) (state legislature violated the Fifteenth Amendment by altering city boundaries "from a square to an uncouth twenty-eight-sided figure," and, as a result, excluding nearly all black voters without excluding a single white voter).

tical proof normally must present a 'stark' pattern to be accepted as the sole proof of discriminatory intent under the Constitution"). This is not one of those rare cases. The crack-powder disparity is explainable on grounds other than race—namely, Congress's rational belief that crack cocaine offenses should be punished more severely than powder cocaine offenses. *Accord United States v. Byse*, 28 F.3d 1165, 1170 n.8 (11th Cir. 1994); *United States v. Singleterry*, 29 F.3d 733, 741 (1st Cir. 1994).

Because Moore has not established discriminatory intent, rational basis review applies. As discussed above, the crack-powder disparity is rationally related to Congress's legitimate interest in protecting the public from the effects of crack cocaine. Therefore, Moore's equal protection claim cannot succeed.

### C. Application of the Fair Sentencing Act of 2010

The parties submitted supplemental briefs addressing whether the FSA, which increased the drug quantities necessary to trigger mandatory minimum sentences, should apply to Moore, who was sentenced three months before the FSA's effective date. The FSA effectively reduced the crack-powder disparity from 100-to-1 to approximately 18-to-1. We have held that the FSA does not operate retroactively. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Ten other circuits agree. *See United States v. Goncalves*, 2011 WL 1631649, at *6 n.8 (1st Cir. April 28, 2011) (citing cases). Moreover, we have noted that the relevant date is the date on

which the defendant's conduct took place, not the date of sentencing. *United States v. Fisher*, 2011 WL 832942, at *1 (7th Cir. March 11, 2011). Thus, under our case law, the FSA does not apply to Moore, who was sentenced based on conduct that occurred before the statute's August 3, 2010 effective date.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.